## Sarah D. Auge, Appellant, *v.* Smedley Darlington.

[Marked to be reported.]

*Evidence—Cross-examination—Nonsuit—Laches.*

In an action to recover the value of bonds which the plaintiff alleged the defendant had sold without authority, a nonsuit is properly entered, if it appears from the plaintiff's testimony that the defendant was her confidential agent; that he received money upon her securities as they matured, and reinvested the proceeds; that he sold the bonds in controversy four years before suit was brought, and invested their proceeds in other bonds, and had collected and paid over interest upon the same, and that plaintiff, with full knowledge of the transaction, and living in the same town with defendant, and with the new securities in her possession, had not for four years made any inquiry or complaint; the plaintiff, not having disaffirmed defendant's acts within this length of time, will be presumed to have ratified them.

Argued Feb. 8, 1898. Appeal, No. 266, Jan. T., 1897, by plaintiff, from order of C. P. Chester Co., Oct. T., 1895, No. 50, refusing to take off nonsuit.. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover the value of bonds alleged to have been converted by defendant to his own use.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* among others were (1) in refusing to take off nonsuit; (2-7) in permitting plaintiff to be cross-examined upon the various matters referred to in the opinion of the Supreme Court.

*Charles H. Pennypacker,* for appellant.—The cross-examination will not be permitted to lead out new matter constituting defendant's own case, which he has not yet opened to the jury: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35 ; Malone v. Dougherty, 79 Pa. 46 ; Ellmaker v. Buckley, 16 S. & R. 72 ; Castor v. Bavington, 2 W. & S. 505 ; Jackson v. Litch, 62 Pa. 451 ; Fulton v. Central Bank, 92 Pa. 112 ; Monongahela Water Co. v. Stewartson, 96 Pa. 436 ; Irvin v. Irvin, 142 Pa. 271 ; Longenecker v. Penna. R. Co., 105 Pa. 334 ; Hughes v. Westmoreland Coal Co., 104 Pa. 207 ; Sullivan v. R. R., 175 Pa. 365.

Where the law does not by the operation of any principle or established rule decide upon the legal quality of the simple facts, it is for the jury to draw the general inference of reasonable or unreasonable time : Magee v. Carmack, 13 Ill. 289 ; Grotz v. Lehigh, etc., Coal Co., 1 Kulp, 53 ; Shepler v. Scott, 85 Pa. 331 ; Strunk v. Fireman's Ins. Co., 160 Pa. 345 ; Porter v. Patterson, 15 Pa. 235 ; Bredin v. Dubarry, 14 S. & R. 27 ; Schrack v. McKnight, 84 Pa. 27 ; Pittsburg, etc., R. R. v. Gazzam, 32 Pa. 340 ; Hamlin v. Sears, 82 N. Y. 327 ; Rhines v. Evans, 66 Pa. 195.

*R. T. Cornwell,* with him *John J. Gheen* and *Gibbons Gray Cornwell,* for appellee, cited on the question of cross-examination : Hopkinson v. Leeds, 78 Pa. 396 ; Fulton v. Central Bank of Pittsburg, 92 Pa. 112 ; Bohan v. Avoca Borough, 154 Pa. 404 ; Bank v. Fordyce, 9 Pa. 277 ; and on the question of acquiescence : Story on Agency, sec. 355 ; 1 Livermore on Agents, 50 ; 2 Greenleaf on Evidence, sec. 66 ; 2 Herman on Estoppel and Res Judicata, sec. 1060 ; Evans v. Mengel, 6 W. 72 ; McCulloch v. McKee, 16 Pa. 289 ; Mitchell v. Freedley, 10 Pa. 198 ; Filby v. Miller, 25 Pa. 264 ; Bredin v. Dubarry, 14 S. & R. 27 ; Kelsey v. Bank of Crawford Co., 69 Pa. 426 ; Porter v. Patterson, 15 Pa. 229.

OPINION BY MR. JUSTICE WILLIAMS, March 21, 1898 :

This appeal is from a judgment entered upon a compulsory nonsuit. The plaintiff was the only witness sworn at the trial, and the validity of this judgment must depend upon the fair legal effect of her testimony. Upon her direct examination, she testified that in 1891 the Chester County Guarantee Trust .

Company held in its possession bonds and securities belonging to her, for the safe keeping of which she was paying to it $1.00 on each $1,000 of the par value of the securities. Among these were two bonds for $1,000 each, issued by townships in Kansas in aid of some railroad enterprise, bearing interest at the rate of seven per cent. In July, 1891, she was requested by the trust company to take her securities away, and went to its office for that purpose. She there met the defendant who took from an unsealed envelope and put upon the table before her the securities which he alleged were hers. She stated that she missed from among them the two seven per cent township bonds and inquired where they were, and that the defendant replied that he feared trouble with them when they should mature and had sold them. This action to recover their value was brought in September, 1895. Now these statements, without explanation, and wholly separated from the circumstances surrounding them, amounted to a charge that the defendant had taken from the plaintiff without her knowledge or consent, and sold for his own benefit, these two bonds. So far as a legitimate cross-examination would explain the relations between these parties and put the transaction complained of in its own proper light before the jury, the defendant had a right to cross-examine. We think this right was pushed very far, and that the several certificates issued by the trust company to the plaintiff showing what securities were held by it for her are not in this case in any proper sense. They were produced by defendant's counsel, identified and marked by the stenographer, but they were not in evidence, and we do not see how they could have been made evidence without having been offered on behalf of the defendant as part of his case. Leaving these out of consideration and limiting the cross-examination to its proper province, was the effect of the examination in chief so far affected as to justify the judgment of nonsuit?

It appeared that the defendant had been the trusted confidential agent and adviser of the plaintiff for many years, and of her father before her; that he received the moneys paid upon her bonds as they matured and was trusted to reinvest such money upon his own judgment; that he had sold the two bonds for which this suit is brought and had invested their proceeds in other bonds or securities of equal par value, and had, up to

July, 1891, collected the interest thereon and paid it regularly to the plaintiff. What was left of the charge of abstraction, or improper use of the plaintiff's bonds for his own benefit after these explanatory facts appeared? When the mere skeleton of fact presented by the direct examination had been rounded out into the proper proportions which belonged to the transaction by adding to it the circumstances and explanations developed by the cross-examination, the first impression created by the story had disappeared. There was now nothing left to support the theory of an unauthorized abstraction and conversion of the plaintiff's bonds on which the action was based. There was no breach of trust; no making use of his position for his own profit and, so far as the evidence goes, no proof that the bonds purchased with the proceeds of the Kansas bonds were not worth their face. If the exchange was not a wise one and the new bonds are really worth less than the old ones, Mrs. Auge's agent may possibly be answerable to her for her real loss; but there was no proof upon this subject. She was in the possession of the new securities, bought with the proceeds of the old, and yet asking to recover the value of the old from her confidential agent who had made the exchange on her behalf. But, what is quite as much to the point is, that she was advised of these transactions and put in possession of the new securities in July, 1891. She should within a reasonable time thereafter have determined whether to ratify or disaffirm the act of her financial agent. If within such reasonable time she does not disaffirm, she will be presumed to have ratified. These parties lived in the same town. Opportunities for conference were within easy reach. For more than four years, she retained possession of the new securities without, so far as appears, a word of inquiry or a word of complaint. From her testimony, we infer that she still holds possession of them. Now after these years, without notice or demand, she attempts to disaffirm the action of her agent. We incline to the opinion expressed by the learned judge of the court below that this attempted disaffirmance comes too late. This question must be considered under all the circumstances that surround this case, such as the relations that existed between these parties, their residence in the same town, the ease with which inquiries about the character of her securities could be made by the plaintiff, and the abundance of

the sources of such information that were within her reach. If with all these advantages for knowing the exact situation, she delays action for more than four years, the conclusion that her delay is unreasonable is a conclusion of law. The presumption would seem to be a fair one that action taken at such a time has been taken in view of circumstances that did not exist at the time of the exchange, or at the time when the securities came into her own hands, but have arisen recently. Upon a careful examination of the testimony of Mrs. Auge, and after excluding as much of the cross-examination as seems to us to have transcended the proper limit, we are of opinion that the plaintiff showed no right to recover in this case.

The judgment of nonsuit was, therefore, properly entered and is now affirmed.